IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


BLACKIE F. ALVAREZ,                          CV 04-884-BR

        Plaintiff,                           OPINION AND ORDER

v.

JEAN HILL, Superintendent, Snake
River Correctional Institution; MAX
WILLIAMS, Director of Oregon
Department of Corrections; MITCH
MORROW, Deputy Director of Oregon
Department of Corrections; JUDY
GILMORE, Superintendent of
Transitional Services, Snake River
Correctional Institution; STEVE
FRANKE, Asst. Superintendent of
Security, Snake River Correctional
Institution; TOM O'CONNER,
Administrator of Religious Services,
Oregon Department of Corrections;
TOM ARMSTRONG, Asst. Administrator of
Religious Services and Chaplain at
Snake River Correctional Institution;
STEVE BRABB, Chaplain at Snake River
Correctional Institution; BRAD CAIN,
Correctional Officer, Snake River
Correctional Institution; SONNY RIDER,
Security Manager, Snake River
Correctional Institution; and SONIA
HOYT, Security Manager, Snake River
Correctional Institution,

        Defendants.


1  -  OPINION AND ORDER

**P. ANDREW McSTAY, JR.**
**DEREK D. GREEN**
Davis Wright Tremaine LLP
1300 S.W. Fifth Ave., Suite 2300
Portland, OR  97201
(503) 241-2300

          Attorneys for Plaintiff

**JOHN R. KROGER**
Attorney General
**JACQUELINE SADKER**
**ELIZABETH C. BRODEEN**
Assistant Attorneys General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301-4096
(503) 378-6313

          Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Defendants' Motion
(#116) for Summary Judgment, Plaintiff Blackie F. Alvarez's
Motion (#131) to Strike, and Plaintiff's unopposed Request for
Judicial Notice (#138).  This Court has subject matter
jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).

     For the reasons that follow, the Court **DENIES** Plaintiff's
Motion (#131) to Strike in its entirety, **GRANTS** Plaintiff's
Request for Judicial Notice (#138), and **GRANTS in part** and **DEFERS
in part** Defendants' Motion (#116) for Summary Judgment.

## PROCEDURAL BACKGROUND

Plaintiff's claims arise from his prior incarceration at the Snake River Correctional Institution (SRCI), a facility that is part of the Oregon Department of Corrections (ODOC).

On June 29, 2004, Plaintiff filed *pro se* a Complaint in this Court.  On December 8, 2004, Defendants moved for summary judgment as to all of Plaintiff's claims.  At that time, the Court construed Plaintiff's Complaint as alleging legal and equitable claims against officials at SRCI in their individual and official capacities for substantially burdening Plaintiff's religious rights in violation of the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

On December 14, 2005, this Court found SRCI's restrictions on Plaintiff's religious practices did not rise to the level of a constitutional violation of his rights and that Defendants did not deny Plaintiff access to legal materials in violation of the United States Constitution.  The Court, therefore, granted Defendants' Motion.  The Court also granted Plaintiff's request to dismiss his due-process claims.

On December 31, 2005, Plaintiff filed an appeal to the Ninth Circuit.  On April 25, 2008, the Ninth Circuit issued a mandate remanding this matter.  Although the Ninth Circuit affirmed this Court's grant of summary judgment to Defendants as to Plaintiff's claim that Defendants denied him access to legal materials, the

court, nonetheless, vacated this Court's grant of summary judgment to Defendants as to Plaintiff's religious claims because this Court did not assess Plaintiff's religious claim under the correct standard as set forth in the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-1 - 2000cc-7 (2000), nor perform the "more searching scrutiny RLUIPA requires." *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2008). The Ninth Circuit found the First Amendment standard that this Court applied at the summary-judgment stage is a higher bar than the statutory standards under RLUIPA; *i.e.*, the First Amendment prohibits actions that constitute a "substantial burden" on an inmate's exercise of his religion unless those actions are in furtherance of "legitimate" institutional goals while RLUIPA prohibits actions that constitute a substantial burden on an inmate's religious exercise unless those actions further a "compelling" government interest by the "least restrictive means." *Id*. The Ninth Circuit noted the "least restrictive means" under RLUIPA precludes justification for restricting an inmate's religious exercise on the sole ground that the restriction is necessary to maintain order and security. *Id*. In other words, to prevail Defendants must "demonstrate that they actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *See id*. at 1156-57.

4 - OPINION AND ORDER

As of June 13, 2008, after remand, Plaintiff was represented by counsel.

On February 6, 2009, Defendants moved for summary judgment as to Plaintiff's then-remaining claims.  In their Motion, Defendants assert the parties agree the issues are:

1.  whether Defendants violated Plaintiff's rights when they did not provide weekly sweat lodges, denied Plaintiff access to sweat-lodge ceremonies while he was in disciplinary segregation, and performed institutional counts of inmates during sweat-lodge ceremonies;

2.  whether Defendants violated Plaintiff's rights by not employing enough Native American religious providers and not allowing inmates to lead religious services;

3.  whether Defendants violated Plaintiff's rights when they did not allow Plaintiff to wear a headband at all times;

4.  whether Defendants violated Plaintiff's rights by not holding a yearly powwow at SRCI during Plaintiff's incarceration; and

5.  whether Defendants violated Plaintiff's rights by not allowing Plaintiff to use pure tobacco in his pipe ceremony and not affording an official Native American pipe carrier to carry the pipe to Plaintiff when he was in disciplinary segregation.

On May 8, 2009, Plaintiff filed his Response to Defendants'

Motion in which he clarified he is pursuing his claims only under RLUIPA and is not pursuing claims based on Defendants' alleged denial of group worship for special-housing inmates or claims against Defendants Sonny Rider and Sonia Hoyt.

On May 8, 2009, Plaintiff filed a Motion to Strike Defendants' Submissions in Support of Motion for Summary Judgment and filed a Request for Judicial Notice.  Defendants did not respond to Plaintiff's Request for Judicial Notice.

On September 10, 2009, the Court heard oral argument on Defendants' Motion for Summary Judgment.  The Court requested the parties to submit supplemental briefs with respect to whether claims against Defendants in their individual capacities are available under RLUIPA, whether the doctrine of qualified immunity applies to claims pursued under RLUIPA against individuals, whether Defendants' Motion properly put Plaintiff on notice of summary judgment as to Plaintiff's claims against Defendants in their individual capacities or as to Defendants' assertions of qualified immunity from those claims, whether Plaintiff's claim for damages against Defendants in their individual capacities is viable, and whether Plaintiff may pursue a claim under 42 U.S.C. § 1983 for Defendants' alleged violations of RLUIPA.  The Court also requested the parties to confer and to determine whether they could stipulate to the nature of Plaintiff's post-prison supervision in Oregon in light of

6  -  OPINION AND ORDER

Defendants' argument that Plaintiff's injunctive and declaratory-relief claims are moot due to his release from SRCI in March 2007.

Thereafter, on September 18, 2009, Defendants filed a Notice of Plaintiff's Parole Status in which Defendants informed the Court that the parties could not stipulate to the facts surrounding Plaintiff's post-prison status in Oregon.  Plaintiff then filed two responsive briefs on September 25 and 29, 2009.  On October 9, 2009, Defendants filed their Supplemental Brief in support of their Motion for Summary Judgment.  On November 4, 2009, Plaintiff filed his Response.  The Court took this matter under advisement on November 4, 2009.


## PLAINTIFF'S MOTION TO STRIKE (#131)

Plaintiff requests the Court to strike all of Defendants' submissions in support of their Motion for Summary Judgment. Specifically, Plaintiff contends the Court should strike the Affidavits of Brad Cain, Mike Beagen, and Jean Hill on the grounds that they state they rely on ODOC records generally rather than only the specific documents attached to their Affidavits, and, therefore, they have not complied with the requirements of Federal Rule of Civil Procedure 56(e)(1).

Plaintiff also requests the Court to strike the Affidavits of Sonny Rider, Max Williams, Judy Gilmore, Tom O'Connor, and

Mitch Morrow because they rely on ODOC records that are not attached to their Affidavits, and, therefore, they also have not complied with the requirements of Rule 56(e).

In addition, Plaintiff requests the Court to strike the Affidavits of Tom Armstrong, Jeff Premo, Steve Brabb, Mike Beagen, Jean Hill, and the Declaration of Steve Franke because none of the ODOC records that are attached to their Affidavits meet the requirements of Federal Rule of Evidence 803(6).

Finally, Plaintiff requests the Court to strike the Declaration of Christopher Grant on the grounds that it consists of hearsay statements and is based on documents that are not part of the record.

As an alternative to striking these materials, Plaintiff requests this Court to order Defendants to file corrected pleadings together with proper supporting documents.

On June 22, 2009, Defendants filed a Response to Plaintiff's Motion to Strike in which Defendants stated the general references to ODOC records were typographical errors.  Defendants attached Amended Affidavits from the individuals referenced above with the exception of the Affidavits of Premo and Armstrong.  On October 9, 2009, Defendants filed an Unopposed Motion to Allow Filing of [the] Second Amended Affidavit of Brad Cain, which the Court granted on October 14, 2009.  Defendants assert the Amended Affidavits now comply with both Federal Rule of Evidence 803(6)

and Federal Rule of Civil Procedure 56(e); the Declaration of
Christopher Grant is admissible as an expert report; and all of
the attachments to the Amended Affidavits, the Affidavits of
Premo and Armstrong; and the Declarations are otherwise
admissible.

Plaintiff did not object to the filing of any of the amended
documents submitted by Defendants.

**I.    Compliance with Federal Rule of Civil Procedure 56(e).**

Rule 56(e) provides in part:

> A supporting or opposing affidavit must be
> made on personal knowledge, set out facts
> that would be admissible in evidence, and
> show that the affiant is competent to testify
> on the matters stated.  If a paper or part of
> a paper is referred to in an affidavit, a
> sworn or certified copy must be attached to
> or served with the affidavit.  The court may
> permit an affidavit to be supplemented
> or opposed by depositions, answers to inter-
> rogatories, or additional affidavits.

Rule 56(e) "requires that a proper foundation be laid for
evidence considered on summary judgment.  The documents must be
authenticated and attached to a declaration wherein the declarant
is the 'person through whom the exhibits could be admitted into
evidence.'"  *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir.
2007)(quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542, 1551 (9th Cir. 1990)).

**A.    Affidavits of Brad Cain, Mike Beagen, and Jean Hill.**

In their original Affidavits, Cain, Beagen, and Hill stated

he or she is a custodian of the records at ODOC and also included the following statement: "I make this affidavit from a combination of personal knowledge and in reliance on ODOC records, all of which are regularly maintained in the normal course of business." Each Affidavit also included copies of ODOC records.

As noted, Defendants stated in their Response that the general references to ODOC records were due to typographical errors, and, therefore, Defendants attached Amended Affidavits to their Response in which each of the Affiants state: "I make this affidavit from a combination of personal knowledge and in reliance on the attached ODOC records." Accordingly, the Amended Affidavits of Beagen and Hill and the Second Amended Affidavit of Cain now comply with the requirements of Rule 56(e). *See Bias*, 508 F.3d at 1224 (district court has discretion to allow parties to address clerical errors before additional substantive issues are raised).

The Court, therefore, denies Plaintiff's Motion to Strike the Affidavits of Cain, Beagen, and Hill as amended.

**B.    Affidavits of Sonny Rider, Max Williams, Judy Gilmore, Tom O'Connor, and Mitch Morrow.**

In their original Affidavits, Rider, Williams, Gilmore, O'Connor, and Morrow stated he or she is a custodian of the records at ODOC and also included the following statement: "I make this affidavit from a combination of personal knowledge and

10 -  OPINION AND ORDER

in reliance on ODOC records, all of which are regularly
maintained in the normal course of business."  Although none of
these Affidavits had any documents attached and, therefore, do
not meet the requirements of Rule 56(e), Defendants stated in
their Response that the general references to ODOC records were
made in error and filed Amended Affidavits with their Response in
which all references to ODOC records were removed.  Accordingly,
the Amended Affidavits of Rider, Williams, Gilmore, and Morrow
now comply with the requirements of Rule 56(e).  *See id.* at 1224.

Defendants also stated in their Response that the exhibits
to the O'Connor Affidavit were inadvertently omitted in the
initial filing, and Defendants submitted an Amended Affidavit
with the exhibits attached.  In addition, O'Connor stated in his
Amended Affidavit that he is a custodian of the records at ODOC
and also includes the following statement:  "I make this
affidavit from a combination of personal knowledge and in
reliance on the attached ODOC records, all of which are regularly
maintained in the normal course of business."  Accordingly,
O'Connor's Amended Affidavit complies with Rule 56(e).

The Court, therefore, denies Plaintiff's Motion to Strike
the Affidavits of Rider, Williams, Gilmore, O'Connor, and Morrow
as amended.

**II.  Compliance with Federal Rule of Evidence 803(6).**

Plaintiff also contends the attachments submitted with the

original Affidavits of Armstrong, Premo, Brabb, Beagen, O'Connor, and Hill and the Declaration of Franke do not comply with the foundational requirements of Rule 803(6).

Business records are admissible under Rule 803(6) if the following foundational facts are established by a qualified witness:  (1) the records were made by a person with knowledge at or near the time of the incident and (2) the records were kept in the course of regularly-conducted business. *United States v. Arias-Villanueva*, 998 F.2d 1491, 1503 (9th Cir. 1993).  A qualified witness is the custodian or preparer of the business records or any other person who understands and has personal knowledge of the business's record-keeping system. *United States v. Ray*, 930 F.2d 1368, 1370-71 (9th Cir. 1990).

The Court notes in addition to ODOC records, several of the Affidavits include portions of the ODOC Rules Manual consisting of Oregon Administrative Rules and ODOC official policies.  Under Federal Rule of Evidence 201, the Court may take judicial notice of these documents because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[1]  Indeed, Plaintiff has requested the Court to take notice of two ODOC official policies.

---

[1] An index to ODOC official policies may be found at http://www.oregon.gov/DOC/PUBSER/rules_policies/policies_alpha.shtml.

12 - OPINION AND ORDER

**A.    Premo and Beagen Affidavits.**

The attachments to the Affidavit of Premo and the Amended Affidavit of Beagen include only Oregon Administrative Rules and ODOC official policy statements, and, therefore, those attachments are admissible under Rule 201.

**B.    Armstrong Affidavit.**

In addition to Oregon Administrative Rules, the attachments to the Armstrong Affidavit include a dated list of religious services attended by Alvarez.  This attachment complies with Rule 803(6) on the basis of the testimony of both Armstrong and Brabb that, as custodians of ODOC records, the document was regularly maintained in the normal course of business.

An ODOC "Inmate Self-Assessment Form," however, is also attached to the Armstrong Affidavit.  This form was purportedly completed by Plaintiff and, therefore, is not admissible under Rule 806(3) because Plaintiff was not under a business duty to report accurate information to the record preparer.  *See Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995).  The contents of the form, however, are the admission of a party-opponent under Rule 801(d)(2) and, therefore, the form is admissible.

**C.    Brabb Affidavit.**

In addition to Oregon Administrative Rules, the attachments to the Brabb Affidavit include the same dated list of religious services attended by Alvarez that is attached to the Armstrong

Affidavit, which is admissible under Rule 803(6) for the reasons stated above.

**D.    Franke Declaration and Hill Affidavit.**

The Franke Declaration includes only one attachment, which consists of three "Inmate Communications" dated March 15, 2004; March 18, 2004; and March 28, 2004, signed by Plaintiff.  The Amended Hill Affidavit similarly includes an "Inmate Communication" dated April 21, 2004, and signed by Plaintiff.

The portion of each "Inmate Communication" written by Plaintiff is admissible under 801(d)(2).  The "Inmate Communications" form attached to the Franke Declaration also includes a note by an ODOC staff member describing the action taken in response to the "Inmate Communication."  This portion of each "Inmate Communication" is admissible under Rule 803(6) based on Franke's Declaration in which he stated he is a custodian of records at ODOC and the records attached to his Declaration were "regularly maintained in the normal course of business."

**E.    O'Connor Affidavit.**

In addition to an ODOC official policy statement, the Amended O'Connor Affidavit includes a 2005 Survey conducted by ODOC.  Plaintiff also included this Survey in his Response to Defendant's Motion for Summary Judgment.  Accordingly, the Court concludes it is unnecessary to determine whether it complies with Rule 803(6).

14 - OPINION AND ORDER

A letter dated August 23, 2004, from O'Connor to Plaintiff is also attached to the Amended O'Connor Affidavit.  This attachment is admissible under Rule 803(6)based on O'Connor's testimony that he is a custodian of records at ODOC and the records attached to his Affidavit were "regularly maintained in the normal course of business."

In summary, the attachments submitted with the Affidavits of Armstrong, Brabb, and Premo; the Amended Affidavits of Beagen, Hill, and O'Connor; and the Declaration of Franke are admissible under Federal Rules of Evidence 201, 801(d)(2), and 803(6).  The Court, therefore, denies Plaintiff's Motion to Strike the Affidavits of Armstrong, Premo and Brabb; the Amended Affidavits of Beagen, Hill, and O'Connor; and the Declaration of Franke.

**III. Declaration of Christopher Grant.**

Plaintiff contends the Declaration of Grant is inadmissible because it contains hearsay statements and statements based on documents that were not submitted with the Declaration.  According to Defendants, however, Grant is going to testify as an expert at trial, and, therefore, the Court should not strike his Declaration.

> Federal Rule of Evidence 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may

> testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony
> is the product of reliable principles and
> methods, and (3) the witness has applied the
> principles and methods reliably to the facts
> of the case.

The district court must ensure expert testimony is relevant as well as reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-50 (1999). The court's gatekeeping function extends to all expert testimony. *Id.* at 147. Expert opinion contained in a declaration is admissible when it appears the declarant is competent to give an expert opinion and the factual bases for the opinion is stated in the declaration. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).

In his Declaration, Grant demonstrates he has considerable knowledge and experience with regard to Native American gangs, including Native American prison gangs and specifically the Indian Pride Organization (IPO) with which Defendants assert Plaintiff is affiliated. Accordingly, Grant is competent to offer opinion testimony that is relevant to the Court's analysis of Plaintiff's claims. The Court, therefore, denies Plaintiff's Motion to Strike Grant's Declaration.

In summary, the Court denies Plaintiff's Motion to Strike in its entirety, and the Affidavits, Declarations, and Amended Affidavits submitted by Defendants will be appropriately

considered if the Court reaches the merits of Defendants' Motion for Summary Judgment.

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE (#138)

Plaintiff requests the Court to take judicial notice of numerous exhibits attached to the Declaration of John Schochet in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  As noted, Defendants do not object to Plaintiff's request.

Federal Rule of Evidence 201 specifies the requirements for taking judicial notice of adjudicative facts and provides in pertinent part:

> **(b)  Kinds of facts.**  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

> **(c)  When discretionary**.  A court may take judicial notice, whether requested or not.

> **(d)  When mandatory**.  A court shall take judicial notice if requested by a party and supplied with the necessary information.

A court properly may take judicial notice of pleadings filed in other actions.  *See Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir.) (court took judicial notice of pleadings filed in a related state-court action), *cert. denied*, 525 U.S. 873 (1998).  The

17 -  OPINION AND ORDER

existence and content of opinions and pleadings are matters capable of accurate and ready determination by resort to official court files that cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).

Plaintiff requests the Court to take judicial notice of the following documents attached to the Declaration of John Schochet:

1.    Exhibit D, which is an Answer filed on October 4, 2005, in the case of *Benning v. Georgia*, No. CV602-139, a case filed in the United States District Court for the District of Georgia;

2.    Exhibits K and L, which are printouts of pages from the website of the United States Census Bureau providing population data for California and Oregon respectively;

3.    Exhibit M, which is a printout of a page from the State Personnel Board of the State of California showing job announcements for Native American spiritual leaders by the California Department of Corrections;

4.    Exhibit O, which is a copy of two pages from the Operations Manual of the Department of Corrections and Rehabilitation for the State of California;

5.    Exhibit P, which is a copy of a document titled "Workload and Staffing Survey of Chaplains Employed in California State Government Facilities";

6.    Exhibit Q, which is a copy of a New York State

Department of Corrections Directive titled "Religious Programs and Practices";

7.    Exhibit R, which is a copy of an ODOC official policy titled "Searches of Dreadlocks";

8.    Exhibit S, which is a copy of the Washington Department of Corrections "Religious Property Matrix";

9.    Exhibit T, which is a copy of ODOC's 2007 Government to Government Annual Report; and

10. Exhibit W, which is a State of Washington Department of Corrections Policy Directive titled "Religious Freedom for Offenders."

The Court concludes the above enumerated exhibits are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Accordingly, the Court grants Plaintiff's request for judicial notice of Exhibits D, K, L, M, O, P, Q, R, S, T, and W attached to the Declaration of John Schochet and will consider these exhibits if the Court reaches the merits of Defendants' Motion for Summary Judgment.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#116)

### Standards

**I.    Summary Judgment.**

Federal Rule of Civil Procedure 56(c) authorizes summary

19 - OPINION AND ORDER

judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be

20 - OPINION AND ORDER

necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## II.  RLUIPA.

RLUIPA provides in pertinent part:  "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" unless the government establishes the burden (1) is "in furtherance of a compelling government interest" and (2) is "the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted "RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA defines "religious exercise" as "any exercise of religion,

21 -  OPINION AND ORDER

whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  "This definition reveals Congress' intent to expand the concept of religious exercise contemplated in . . . traditional First Amendment jurisprudence." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760 (9th Cir. 2003).

Under RLUIPA, the plaintiff "bears the initial burden of going forward with evidence to demonstrate a prima facie claim" that the challenged state action constitutes "a substantial burden on [the plaintiff's] exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).  As noted, a defendant may overcome the plaintiff's *prima facie* claim by providing sufficient evidence to establish "the regulation serves a compelling government interest and is the least restrictive means of achieving that interest."  *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008).  *See also* 42 U.S.C. § 2000cc-1(a).

## Discussion

Defendants move for summary judgment as to Plaintiff's claims that his religious practices were unlawfully burdened by Defendants under RLUIPA on the following grounds:  (1) Plaintiff is not entitled to damages against Defendants in their individual or official capacities under RLUIPA, (2) Defendants are entitled to qualified immunity from Plaintiff's claims, (3) Plaintiff

cannot bring his RLUIPA claims under 42 U.S.C. § 1983 as an alternative, (4) Plaintiff's claims for injunctive and declaratory relief are moot because Plaintiff has been released from ODOC custody, (5) RLUIPA's safe-harbor provision insulates Defendants from the statute's preemptive force, and (6) there is not a disputed issue of material fact with respect to any of the ODOC/SRCI policies and practices that Plaintiff alleges substantially burden the practice of his religion.

**I.    Claims for Damages under RLUIPA.**

In their Memorandum in support of their Motion for Summary Judgment, Defendants contend Plaintiff is not entitled to damages against Defendants in their individual or official capacities under RLUIPA.  Plaintiff, however, did not address Defendants' argument in his Response.  At oral argument, the Court gave both parties the opportunity to be heard on this issue and requested both parties to submit supplemental briefs.

In his Response to Defendants' Supplemental Memorandum Plaintiff contends Defendants' argument as to the unavailability under RLUIPA of damages against Defendants in their individual capacities is untimely and should not be considered by the Court. The Court disagrees and notes Defendants asserted in footnote four of their Memorandum in support of their Motion for Summary Judgment that such a claim is unavailable and cited three cases to support their assertion.  Thus, the Court will address this

argument.

**A.    Plaintiff's Damages Claim against Defendants in their Individual Capacities.**

Defendants contend RLUIPA does not provide for damages against Defendants in their individual capacities.  Plaintiff, however, maintains RLUIPA's provision for "appropriate relief" against any "person acting under the color of State law" creates a claim for damages against Defendants in their individual capacities.  *See* 42 U.S.C. §§ 2000cc-2(a), 2000cc-5(4).

In accordance with other circuits, the Ninth Circuit has held RLUIPA is a valid extension of Congress's Spending Clause authority under Article I of the Constitution, which allows Congress to condition acceptance of federal funds by states under certain circumstances.  *See, e.g.*, *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002); *Madison v. Virginia*, 474 F.3d 118, 124 (4th Cir. 2006); *Cutter v. Wilkinson*, 423 F.3d 579, 584-90 (6th Cir. 2005); *Benning v. Georgia*, 391 F.3d 1299, 1305-08 (11th Cir. 2004); *Charles v. Verhagen*, 348 F.3d 601, 606-11 (7th Cir. 2003); *Sossamon v. Texas*, 560 F.3d 316, 328-29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1270, 1274 n.9 (11th Cir.2007); *Van Wyhe v. Reisch*, 581 F.3d 639, 649 (8th Cir. 2009).  Pursuant to Congress's Spending Clause authority, Congress has conditioned a state's acceptance of federal financial assistance for "program[s] or activit[ies]" involving

24 - OPINION AND ORDER

institutionalized persons on acceptance of the religious
protections afforded under RLUIPA.  42 U.S.C. § 2000cc-1.

     Although the Ninth Circuit has not directly addressed
whether RLUIPA provides for damages claims against a state
official in his individual capacity as the result of a state's
acceptance of such funds, the circuits that have directly
addressed this question concluded RLUIPA does not provide for
such a claim against state officials in their individual
capacities because the individual defendant is not the recipient
of federal funding.  *See, e.g.*, *Rendelman v. Rouse*, 569 F.3d 182,
188-89 (4th Cir. 2009); *Madison*, 474 F.3d at 131-32 (Fourth
Circuit); *Sossamon*, 560 F.3d at 328-29 (Fifth Circuit); *Nelson v.
Miller,* 570 F.3d 868, 885-89 (7th Cir. 2009); *Smith*, 502 F.3d at
1271-75 (Eleventh Circuit).  Plaintiff does not cite to any cases
that contradict the law of these circuits.

     The Court notes the plaintiff in *Nelson* pointed out, as
Plaintiff does here, that RLUIPA provides for "appropriate
relief" against "governments" that impose unlawful substantial
burdens on an inmate's religious exercise, and RLUIPA defines
"government" to include "any person acting under color of State
law."  *See* 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(a), 2000cc-5(4).
Thus, the plaintiff in *Nelson* contended RLUIPA imposes liability
for damages on state officials in their individual capacities.
570 F.3d at 885-86.  Relying on the Supreme Court's

25 -  OPINION AND ORDER

interpretation of Congress's Spending Clause authority, the Seventh Circuit held RLUIPA must be interpreted like a "contract" between the federal government and states that accept federal funds. *Id.* at 887 (citing *Dakota v. Dole*, 483 U.S. 203, 206 (1987), and *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).  Accordingly, legislation enacted under Congress's Spending Clause authority must clearly condition state acceptance and the state must "voluntarily and knowingly accept" the unambiguous terms of the contract. *Nelson*, 570 F.3d at 887 (quoting *Pennhurst*, 451 U.S. at 17).  RLUIPA's provision of "appropriate relief," however, does not expressly indicate or even imply congressional intent to create liability for damages against state officials in their individual capacities.  Like the Eleventh Circuit in *Smith* and the Fifth Circuit in *Sossamon*, the Seventh Circuit held RLUIPA "cannot be construed as creating a private action against individual defendants for monetary damages" because individuals are not a party to the "contract" between the federal government and the states and such individuals do not receive any federal funds. *Nelson*, 570 F.3d at 887 (quoting *Smith*, 502 F.3d at 1271-75). *See also Sossman*, 560 F.3d at 328-29, n.34-35 (Spending Clause legislation may only create liability for federal funding recipients, and interpretation of RLUIPA as authorizing a claim against state officials in their individual capacities would lead to an

unconstitutional exercise of congressional authority).

Plaintiff analogizes RLUIPA to 42 U.S.C. § 1983 to support his position that an action at law lies against "every person, who under color of law" violates federal law. *Compare* 42 U.S.C. § 1983 *with* 42 U.S.C. § 2000cc-5(4). Plaintiff's analogy, however, is not appropriate because § 1983 expressly provides for "an action at law" and RLUIPA does not. *Compare* 42 U.S.C. § 1983 *with* 42 U.S.C. § 2000cc-2(a).

The Court, therefore, concludes RLUIPA itself does not authorize a claim for damages against Defendants in their individual capacities. Thus, the Court need not address Defendants' argument that they would be entitled to qualified immunity even if they were subject to a claim for damages. *See Sossamon*, 560 F.3d at 327 ("Of course, if no private right of action exists against the defendants in their individual capacities, then a qualified immnunity . . . analysis would be unnecessary.").

**B.   Damages Claims against Defendants in their Official Capacities.**

As noted, RLUIPA conditions a state's acceptance of certain federal funds on the state's consent to an action for "appropriate relief" against the state for violation of RLUIPA's substantive protections. 42 U.S.C. § 2000cc-2(a). Defendants, however, contend the great weight of legal authority holds that claims under RLUIPA against a state prison official in his

official capacity are barred because the state's acceptance of
certain federal funds does not constitute a valid waiver of the
state's Eleventh Amendment immunity to damages claims.
Plaintiff, in turn, contends RLUIPA provides for both equitable
and legal relief such as claims for nominal, compensatory, and
punitive damages against Defendants in their official capacities
and that sovereign immunity does not bar such claims.

A claim against Defendants in their official capacities is
the same as a claim against the State of Oregon. *See Sossamon*,
570 F.3d at 883. Under the Eleventh Amendment, the sovereign is
immune to claims against it by its citizens. U.S. Const. amend
XI. Congress, however, may abrogate a state's sovereign immunity
under certain circumstances or, as with other constitutional
rights, a state may voluntarily waive its right to immunity. See
*Lane v. Pena*, 518 U.S. 187, 192-198 (1996). As noted, Plaintiff
contends RLUIPA's provision for "appropriate relief" constitutes
a valid waiver of a state's sovereign immunity to all forms of
relief if a state elects to accept certain federal funds.

The test for waiver of sovereign immunity is a "stringent
one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ.
Expense Bd.*, 527 U.S. 666, 675-78 (1999)(quotation omitted). The
waiver of sovereign immunity to claims for damages must be an
"unequivocal expression" in the text of the statute, and the
scope of such waivers is strictly construed in favor of the

sovereign.  *Lane*, 518 U.S. at 192.  *See also Coll Sav. Bank*, 527 U.S. at 675-78 (waivers of sovereign immunity must be "unmistakably clear").  Sovereign immunity may not be impliedly or constructively waived, and courts "indulge every reasonable presumption against waiver."  *Coll. Sav. Bank*, 527 U.S. at 678-82.  Any ambiguity in the waiver of sovereign immunity is construed in favor of immunity.  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

As noted, RLUIPA provides a person may "assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  Although RLUIPA conditions receipt of certain federal funds on a state's consent to a lawsuit against it, a waiver of sovereign immunity as to equitable claims, for example, does not necessarily constitute a waiver for claims for damages.  *See Lane*, 518 U.S. 192-97.

According to Plaintiff, the Court must interpret "appropriate relief" to include both equitable relief and an action for damages against Defendants in their official capacities.  To support his argument, Plaintiff cites to the decision of the Eleventh Circuit in *Smith* in which the court held RLUIPA authorizes damages claims against a defendant in his official capacity even though the court also found RLUIPA does not provide a claim against a defendant in his individual

capacity.[2]  502 F.3d at 1271.

In *Smith* the Eleventh Circuit held the phrase "appropriate relief" encompasses an action for damages, and, therefore, RLUIPA effectuated a clear waiver of sovereign immunity by a state that accepts certain federal funds.  502 F.3d 1275-76 (citing *Benning v. Georgia*, 391 F.3d 1299, 1305-06 (11th Cir. 2004)).  The Eleventh Circuit relied on the Supreme Court's decision in *Franklin v. Gwinett County Public Schools* in which the Supreme Court concluded courts should presume the availability of all appropriate remedies, including the availability of damages, when Congress has not given a clear indication to the contrary.  *Id*. at 1269-71.  Thus, the Eleventh Circuit concluded a plaintiff may seek damages against state officials in their official capacities under RLUIPA.  *Id*. at 1272.  The Eleventh Circuit also concluded, in accordance with its prior decision in *Benning*, the phrase "appropriate relief" is sufficient as well to constitute a clear waiver of the state's sovereign immunity to actions for damages without discussing how the rules of interpretation for the phrase "appropriate relief" might differ when interpreting waivers of

---

[2] Plaintiff also cited *Sisney v. Reich*, 533 F. Supp. 2d 952 (D.S.D. 2008), in support of his argument, but *Sisney* has since been overturned by the Eighth Circuit in *Van Wyhe* in which the court held an action for damages against the defendants in their official capacities under RLUIPA is barred by the Eleventh Amendment.  581 F.3d at 652-55 (reversing the district court's conclusion that the state had waived sovereign immunity to damages claims under RLUIPA because the phrase "appropriate relief" is too ambiguous to effectuate a waiver).

30 -  OPINION AND ORDER

sovereign immunity.

In *Sossamon* the Fifth Circuit analyzed at length the Eleventh Circuit's holding in *Benning* and *Smith* in light of the approach taken by other circuits such as the Fourth Circuit in *Madison*. *Sossamon*, 560 F.3d at 329-31. The Fifth Circuit noted even though the Eleventh Circuit may have been correct that courts presume the availability of damages when determining the types of claims implied by congressional use of the term "appropriate relief," different rules of construction apply when determining the proper scope of that phrase for purposes of interpreting a waiver of sovereign immunity in a Spending Clause enactment. *Id*. at 330-31 ("Of course, there can be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on a grant of federal monies, it must do so unambiguously.")(quoting *Pennhurst,* 451 U.S. at 17). In *Lane* the Supreme Court discussed *Franklin* and reached the same conclusion. The Court held when "a cause of action is authorized against the . . . government, the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived." *Lane*, 518 U.S. at 197. In other words, even if RLUIPA permits the recovery of damages against defendants in their official capacities as a form of "appropriate relief," it is still necessary to find a state's

31 - OPINION AND ORDER

mere acceptance of federal funds constituted a sufficiently clear and unequivocal waiver of the state's sovereign immunity to those claims.

In *Madison* the Fourth Circuit held the term "appropriate relief" is ambiguous as used in RLUIPA because it may reasonably be interpreted to include or to exclude claims for damages. 474 F.3d at 131-32. For example, the Fourth Circuit noted the holding in *Webman v. Federal Bureau of Prisons,* 441 F.3d 1022, 1026 (D.C. Cir. 2006), in which the D.C. Circuit found the term "appropriate relief" in the now-repealed Religious Freedom and Reform Act was ambiguous because it could be plausibly interpreted as including or excluding claims for damages and, therefore, did not constitute an unequivocal waiver of immunity from claims for damages. *Madison*, 474 F.3d at 131-32. In *Sossamon* the Fifth Circuit found the Fourth Circuit's approach to be more persuasive than that of the Eleventh Circuit. 560 F.3d at 330-31.

Although the Ninth Circuit has not addressed this issue explicitly, every circuit that has done so except for the Eleventh Circuit has reached the same conclusion as the Fourth and Fifth Circuits; *i.e.,* that states do not waive their sovereign immunity to damages claims under RLUIPA by accepting federal funds. *See, e.g., Cardinal v. Metrish*, 564 F.3d 794, 798-802 (6th Cir. 2009); *Nelson*, 570 F.3d at 883-85 (Seventh

32 - OPINION AND ORDER

Circuit); *Van Wyhe*, 581 F.3d at 652-55 (Eighth Circuit).  Thus, this Court concludes, in accord with this great weight of authority, that RLUIPA's reference to "appropriate relief" is ambiguous and the statute does not effectuate a clear and unequivocal waiver of the state's sovereign immunity to claims for damages.  Accordingly, the Court declines to read RLUIPA's language as broadly as Plaintiff requests and holds the Eleventh Amendment bars Plaintiff's damages claims under RLUIPA against Defendants in their official capacities.

As an alternative, Plaintiff states in his Response that he has a damages claim against Defendants in their official capacities under the Civil Rights Remedies Equalization Act of 1986 (CRREA), 42 U.S.C. §§ 2000d-2000d-7.  CRREA provides in pertinent part:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7.  Although RLUIPA is not one of the listed statutes in CRREA, Plaintiff contends RLUIPA is a "[f]ederal statute prohibiting discrimination," and, therefore, CRREA effectuates a waiver of the state's sovereign immunity to damages

33 - OPINION AND ORDER

claims.  *Id.*  Plaintiff cites only *Sisney v. Reich*, a District of South Dakota case, to support his argument.  *See* 533 F. Supp. 2d at 970.  As noted, however, *Sisney* was overturned by the Eighth Circuit in *Van Wyhe* after Plaintiff filed his Response in this case.  581 F.3d at 654-55.

In *Van Wyhe*, the Eighth Circuit rejected the district court's interpretation of CRREA and held:

> The district court concluded that, although RLUIPA is not listed specifically in CRREA, RLUIPA is within its catch-all phrase as a federal statute "prohibiting discrimination," . . . and thus, CRREA's explicit waiver of sovereign immunity applies equally to RLUIPA. We respectfully disagree with that analysis.
>
> [RLUIPA] does not unambiguously prohibit discrimination-it prohibits substantial burdens on religious exercise, without regard to discriminatory intent.  Congress understands how to create a federal statute prohibiting discrimination, and it did so within RLUIPA's separate section (Section 2) dealing with land use regulations.  Section 2 of RLUIPA prohibits "discrimination" against religious institutions "on the basis of religion" . . . . 42 U.S.C. § 2000cc(b)(1), (2).  Similar language, prohibiting discrimination or requiring equal treatment, is conspicuously omitted from the RLUIPA protections afforded to institutionalized persons under Section 3. . . .  The antidiscrimination statutes listed in CRREA all explicitly prohibit discrimination, and the institutionalized persons section of RLUIPA does not fit neatly within that genre.

581 F.3d 654-55.  *See also Madison*, 474 F.3d at 133.

Plaintiff has not cited any additional authority to support his contention, and, in any event, this Court adopts the

34 -  OPINION AND ORDER

persuasive reasoning of the Eighth Circuit as its own. Accordingly, the Court concludes CRREA does not effectuate a knowing waiver of the state's sovereign immunity from claims for damages under RLUIPA.

For all thee reasons, the Court concludes Plaintiff's damages claims against Defendants in their official capacities are barred by the Eleventh Amendment.

## II.  Plaintiff's Pursuit of Religious Rights Protected by RLUIPA under § 1983.

In his Complaint, Plaintiff did not expressly assert § 1983 as an avenue for relief nor did the Ninth Circuit find Plaintiff sought relief pursuant to § 1983.  Moreover, Plaintiff did not assert claims under § 1983 in his Response to Defendants' Motion for Summary Judgment.  Plaintiff, however, asserted at oral argument and in his responsive supplemental brief that he pursues his claims under 42 U.S.C. § 1983 as an alternative if the Court concludes damages claims are not available under RLUIPA. Plaintiff did not cite any authority beyond the text of § 1983 to support his assertion that he may pursue the rights afforded by RLUIPA under § 1983.  Defendants contend Plaintiff's remedy under § 1983 is precluded by RLUIPA's express cause of action, and, in any event, Plaintiff would not be able to pursue damages claims under § 1983 because Defendants' sovereign immunity would bar those claims.

Section 1983 provides in relevant part:

35 -  OPINION AND ORDER

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress.

The Supreme Court has held § 1983 "does not provide an avenue for relief every time a state actor violates a federal law." *City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 120 (2005). Whether a right may be enforced under § 1983 depends on Congress's intent, which may be inferred from Congress's creation of a private right of enforcement. *Id.* "The Provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* at 121. *See also Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)("The express provision of one method of enforcing a substantive rule suggests Congress intended to preclude others.").

As noted, RLUIPA itself provides for enforcement of the rights it affords institutionalized persons by means of a private cause of action for "appropriate relief," which the Court has interpreted to be limited to equitable claims against defendants in their official capacities. 42 U.S.C. § 2000cc-2. This private right of action is evidence of Congress's intent to limit

36 - OPINION AND ORDER

enforcement of RLUIPA to the cause of action in § 2000cc-2 and to preclude enforcement under § 1983. *See Abrams*, 544 U.S. at 120.

If Plaintiff were permitted to bring his claims under § 1983, it would broaden RLUIPA's remedial scheme beyond the authority Congress has under the Spending Clause to place conditions on acceptance of federal funds because, as discussed earlier, RLUIPA does not expressly authorize claims for damages or claims against defendants in their individual capacities. In other words, Plaintiff cannot use § 1983 as an end-run around the limited remedial scheme of RLUIPA.

The Court, therefore, concludes Plaintiff cannot resort to § 1983 as an alternative to remedy alleged violations of his religious rights protected under RLUIPA.

**III. Mootness of Plaintiff's Surviving Equitable Claims.**

Defendants assert Plaintiff's release from ODOC custody moots Plaintiff's remaining claims for declaratory and injunctive relief. Although Plaintiff concedes the general rule that a prisoner's release from custody moots his equitable claims against the institution where he was incarcerated, Plaintiff asserts his circumstances meet the "capable of repetition but evading review" exception to the mootness doctrine. As noted, the Court requested the parties at oral argument to confer in an effort to stipulate to the status of Plaintiff's post-prison supervision in Oregon, but the parties could not agree and filed

37 - OPINION AND ORDER

separate briefs.

A case is moot and a court lacks jurisdiction as to such a matter if there is no longer a "live" controversy between the parties because they lack a "legally cognizable interest in the outcome." *Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004)(citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Nonetheless, a party moving to dismiss a matter on the ground that it is moot "bears a heavy burden." *Demery*, 378 F.3d at 1025.

A prisoner's release from prison often moots his claims for declaratory or injunctive relief because his injury could not be redressed by changes in the institution's rules. *See, e.g.*, *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)(citing *Hewitt v. Helms*, 482 U.S. 755, 763 (1987); *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2008)(release from prison "likely" moots prisoner claims for injunctive relief). If, however, a matter comes before the court that is "capable of repetition but evading review," it is considered a live controversy within the jurisdiction of the court. *Demery*, 378 F.3d at 1026-27. The exception applies "when (1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a reasonable expectation that the same parties will be subjected to the same offending conduct." *Id.* at 1026 (citing *Spencer v. Kemma*, 523 U.S. 1, 17-18 (1998)).

Plaintiff notes he was released from ODOC custody in 2007, but his appeal was not decided by the Ninth Circuit until April 2008. Thus, Plaintiff contends he meets the first prong of the exception because his challenge to Defendants' actions could not be finally litigated prior to his release. In fact, Plaintiff filed this action in 2004, and it is still ongoing nearly six years later. The Court, therefore, concludes Plaintiff has established the first prong of the exception.

Plaintiff also contends there is a reasonable expectation that he will return to ODOC custody, and, therefore, there is a risk he again will experience Defendants' alleged violations of RLUIPA. According to Defendants' Notice of Plaintiff's Parole Status, Plaintiff is set to be released in June 2010 from a California prison (for a crime he committed in California), at which time he will be required to return to Oregon to complete his post-prison supervision, which is expected to expire in June 2011. Defendants maintain if Plaintiff were sanctioned in Oregon for the crime he committed in California as a violation of his Oregon post-prison supervision, Plaintiff would serve his sanction-sentence here in a county jail rather than in an ODOC facility.

To support their assertion, Defendants rely on the Declaration of Michelle Mooney, Office Manager for the Oregon Board of Parole and Post Prison Supervision. Mooney cites Oregon

Administrative Rule 213-011-0004, which limits the sanction for criminal activity while on post-prison supervision to "the most restrictive local options available including incarceration in jail."  The Court notes, however, that Oregon Revised Statute § 144.108 contradicts both Defendants' assertion and Oregon Administrative Rule 213-011-0004.  Section 144.108 provides a post-prison supervisee who commits "new criminal activity" may be subject to return to a state correctional facility.  Moreover, in support of Plaintiff's contention that there is a "reasonable expectation" he will return to ODOC custody, Plaintiff cites to the Second Amended Affidavit of Brad Cain in which he states Plaintiff, in fact, was returned to ODOC custody "for a brief period of time in late 2007" after "absconding from his post-prison supervision."  Thus, it appears there is at least some possibility any sanction for the California crime could result in Plaintiff's return to an ODOC facility.

Defendants, nevertheless, assert Plaintiff would only return to ODOC custody if he were to violate the terms of his post-prison supervision by failing to return to Oregon after his release from prison in California or by engaging in other prohibited conduct.  According to Defendants, a warrant would issue if Plaintiff did not return to Oregon or otherwise violated the conditions of post-prison supervision, and Plaintiff, if apprehended outside of Oregon, would be extradited to Oregon to

40 -  OPINION AND ORDER

spend "a couple of weeks" at the Coffee Creek Correctional Facility before being transferred to a county facility.

Although such scenarios appear to present the possibility that Plaintiff could be returned to ODOC custody, the Court cannot determine on the existing record whether such scenarios constitute a "reasonable expectation" that Plaintiff's incarceration by ODOC is "capable of repetition." The Court notes both parties bear a difficult burden on this issue: Defendants have a heavy burden to show the matter is moot, and Plaintiff requests the Court to apply an exception to the mootness doctrine that is appropriate only in "exceptional situations." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

In his Supplemental Memorandum Regarding Mootness, Plaintiff requested this Court to provide additional time for discovery limited to the mootness issue. Because the record reflects this is a close question that could result in dismissal of Plaintiff's remaining claims without addressing their merits, the Court, in the exercise of its discretion and to ensure a complete record on this issue, grants Plaintiff's request for additional discovery limited to the mootness exception. Thus, the Court defers addressing the remaining issues raised by Defendants in their Motion for Summary Judgment pending the outcome of the Court's determination of the mootness issue. At this stage, therefore,

the Court grants in part Defendants' Motion for Summary Judgment as noted herein and otherwise defers resolution of Defendants' Motion as to the issue of mootness, as to the application of the safe-harbor provision under RLUIPA to Plaintiff's claims, and a to whether issues of material fact exist concerning Plaintiff's remaining claims for injunctive and declaratory relief with respect to SRCI policies and practices.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Plaintiff's Motion (#131) to Strike in its entirety, **GRANTS** Plaintiff's Request for Judicial Notice (#138), and **GRANTS in part** and **DEFERS in part** Defendants' Motion (#116) for Summary Judgment as set out in this Opinion and Order.

The Court also **GRANTS** Plaintiff's request for additional discovery and sets April 9, 2010, as the deadline to complete any additional discovery limited to the issue of mootness. The Court also directs the parties to file no later than April 30, 2009, simultaneous supplemental briefs each limited to ten (10) pages addressing only the issue of mootness. At that time, the Court will resolve the mootness issue raised in Defendants' Motion for Summary Judgment without further argument and, depending on the outcome of that analysis, will determine whether it will be necessary to resolve the merits of Plaintiff's remaining RLUIPA

42 -  OPINION AND ORDER

claims in the context of Defendants' still-pending Motion for

Summary Judgment.

IT IS SO ORDERED.

DATED this 12th day of February, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge