IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BLACKIE F. ALVAREZ,                           04-CV-884-BR

      Plaintiff,                          OPINION AND ORDER

v.

JEAN HILL, Superintendent, Snake
River Correctional Institution; MAX
WILLIAMS, Director of Oregon
Department of Corrections; MITCH
MORROW, Deputy Director of Oregon
Department of Corrections; JUDY
GILMORE, Superintendent of
Transitional Services, Snake River
Correctional Institution; STEVE
FRANKE, Asst. Superintendent of
Security, Snake River Correctional
Institution; TOM O'CONNER,
Administrator of Religious Services,
Oregon Department of Corrections;
TOM ARMSTRONG, Asst. Administrator of
Religious Services and Chaplain at
Snake River Correctional Institution;
STEVE BRABB, Chaplain at Snake River
Correctional Institution; BRAD CAIN,
Correctional Officer, Snake River
Correctional Institution; SONNY RIDER,
Security Manager, Snake River
Correctional Institution; and SONIA
HOYT, Security Manager, Snake River
Correctional Institution,

      Defendants.

1  -  OPINION AND ORDER

**P. ANDREW McSTAY, JR.**
Davis Wright Tremaine LLP
1300 S.W. Fifth Ave., Suite 2300
Portland, OR  97201
(503) 241-2300

       Attorneys for Plaintiff

**JOHN R. KROGER**
Attorney General
**JACQUELINE SADKER KAMINS**
**ELIZABETH C. BRODEEN**
Assistant Attorneys General
Department of Justice
1162 Court Street N.E.
Salem, OR  97301-4096
(503) 378-6313

       Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#116) for Summary Judgment.  This Court has subjec-matter
jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).

    For the reasons that follow, the Court **GRANTS** Defendants'
Motion (#116) for Summary Judgment and **DISMISSES** this matter **as
moot**.


## PROCEDURAL BACKGROUND

    On February 12, 2010, the Court issued an Opinion and Order
(#182) in which it, *inter alia*, granted in part and deferred in
part Defendants' Motion (#116) for Summary Judgment.  In its
Opinion and Order, the Court set out the background of this

2  -  OPINION AND ORDER

matter and need not repeat it here.

In their pending Motion for Summary Judgment, Defendants move for summary judgment as to Plaintiff's claims that his religious practices were unlawfully burdened by Defendants under the Religious Land Use and Institutionalized Persons Act (RLUIPA) on the following grounds:  (1) Plaintiff is not entitled to damages against Defendants in their individual or official capacities under RLUIPA, (2) Defendants are entitled to qualified immunity from Plaintiff's claims, (3) Plaintiff cannot bring his RLUIPA claims under 42 U.S.C. § 1983 as an alternative, (4) Plaintiff's claims for injunctive and declaratory relief are moot because Plaintiff has been released from Oregon Department of Corrections (ODOC) custody, (5) RLUIPA's safe-harbor provision insulates Defendants from the preemptive force of the statute, and (6) there is not a disputed issue of material fact with respect to any of the ODOC/Snake River Correctional Institution (SRCI) policies and practices that Plaintiff alleges substantially burden the practice of his religion.

The Court earlier granted summary judgment to Defendants as to Plaintiff's claims under RLUIPA for damages against Defendants and as to Plaintiff's claim under § 1983, which leaves unresolved only Plaintiff's claims against Defendants for declaratory and injunctive relief.  The Court, however, concluded, in accord with Plaintiff's request, that additional discovery on the status of

Plaintiff's post-prison supervision was necessary before the issue of mootness as it applies to these claims could be resolved.  Thus, the Court granted Plaintiff's request for additional discovery limited to the issue of mootness and set April 9, 2010, as the deadline to complete any such discovery. The Court also directed the parties to file simultaneously no later than April 30, 2009, supplemental briefs to address only the issue of mootness.  The Court deferred ruling on Defendants' remaining bases for summary judgment pending resolution of the mootness issue.

On April 30, 2010, Plaintiff and Defendants filed simultaneous briefs on the issue of mootness.  In his brief, Plaintiff raised for the first time an exception to the mootness doctrine.  The Court, therefore, permitted Defendants to file a supplemental response addressing only the exception to mootness that was newly raised by Plaintiff.  On July 28, 2010, Defendants filed their Response, and the Court again took this matter under advisement.

## STANDARDS

A case is moot, and, therefore, a court lacks jurisdiction as to such a matter if there is no longer a "live" controversy between the parties because they lack a "legally cognizable interest in the outcome." *Demery v. Arpaio*, 378 F.3d 1020, 1025

(9th Cir. 2004)(citing *Powell v. McCormack*, 395 U.S. 486, 496
(1969)).  Nonetheless, a party moving to dismiss a matter on the
ground that it is moot "bears a heavy burden." *Demery*, 378 F.3d
at 1025.  The Court notes mootness is a flexible doctrine rather
than "a legal concept with a fixed content susceptible of
scientific verification." *United States Parole Comm'n v.
Geraghty*, 445 U.S. 388, 400-401 (1980)(internal quotation
omitted).

A prisoner's release from prison often moots his claims for
declaratory or injunctive relief because his injury could not be
redressed by changes in the institution's rules. *See, e.g.*,
*Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)(citing *Hewitt v. Helms*,
482 U.S. 755, 763 (1987); *Rhodes v. Robinson*, 408 F.3d 559, 566
(9th Cir. 2008)(release from prison "likely" moots prisoner
claims for injunctive relief).  If, however, a matter comes
before the court that is "capable of repetition but evading
review," it is considered a live controversy within the
jurisdiction of the court. *Demery*, 378 F.3d at 1026-27.  This
exception applies "when (1) the duration of the challenged action
is too short to be litigated prior to cessation, and (2) there is
a reasonable expectation that the same parties will be subjected
to the same offending conduct." *Id*. at 1026 (citing *Spencer v.
Kemma*, 523 U.S. 1, 17-18 (1998)).  This exception to the mootness
doctrine is appropriate only in "exceptional situations." *City*

*of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

The Ninth Circuit has also recognized a limited exception to the general rule (as analogized from the class-action context) that a prisoner's release from custody moots his claims for declaratory and injunctive relief in cases in which the challenged government policies are on-going and threaten to infringe the rights of others similarly situated. *United States v. Howard*, 480 F.3d 1005, 1009-10 (9th Cir. 2007). *See also Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1116-18 (9th Cir. 2003); *United States v. Brandau*, 578 F.3d 1064, 1067-68 (9th Cir. 2009).

## DISCUSSION

As noted, Defendants move for summary judgment as to Plaintiff's claims for declaratory and injunctive relief, *inter alia*, on the ground that Plaintiff's release from custody moots his claims under RLUIPA. Although Plaintiff concedes the general rule that a prisoner's release from custody moots his equitable claims against the institution where he was incarcerated, Plaintiff relies on two exceptions to the mootness doctrine to support his contention that summary judgment is not appropriate on these facts: (1) Plaintiff's circumstances warrant application of the "capable of repetition but evading review" exception to the mootness doctrine and (2) the on-going nature of the policies at SRCI that allegedly burdened Plaintiff's

religious exercise justifies an exception to the mootness
doctrine.

Plaintiff contends the record demonstrates that despite the
general rule that an inmate's release from prison moots his
declaratory and injunctive claims against that institution, his
circumstances warrant application of one or both exceptions to
that rule.  Defendants maintain these exceptions are only applied
in limited circumstances and the facts in this matter establish
Plaintiff's remaining claims are moot.

**I.    Capable of repetition yet evading review.**

In its Opinion and Order issued February 12, 2010, the Court
found Plaintiff satisfied the first prong of the exception by
showing that the duration of the challenged action was too short
to be litigated prior to cessation.  Although the Court did not
request additional briefing by the parties on the first prong of
the exception (whether the matter "evades review"), Defendants
raise the argument that this exception to the mootness doctrine
is "flatly inapplicable to a conditions-of-confinement claim by a
prison inmate."  The cases cited by Defendants, however, do not
establish such a categorical rule.  In accord with Ninth Circuit
law, it is sufficient for the challenged action to be "routinely"
too short to litigate fully.  *See, e.g., Biodiversity Legal
Found. v. Badgley*, 309 F.3d 1166, 1173-74 (9th Cir. 2002).
Indeed, in the context of prisoner challenges to conditions of

7  -  OPINION AND ORDER

confinement, mootness is commonly a decisive issue because prison sentences often are shorter in duration than the process of litigating an action through appeal.  That is the case here, and the Court adheres to its ruling as to the first prong.

The remaining issue is whether Plaintiff's circumstances satisfy the second prong as being "capable of repetition," which is defined as a reasonable expectation that the same parties will be subjected to the same offending conduct.  *See Demery*, 378 F.3d at 1026.  The Supreme Court has defined "reasonable expectation" in this context to mean a "demonstrated probability" rather than a "mere physical or theoretical possibility."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  Specifically, the question is whether the record demonstrates a "reasonable expectation" that Plaintiff will return to ODOC custody and, thereby, be subjected to conditions that he contends unlawfully burden his religious practices in violation of RLUIPA.

According to Plaintiff, the evidence in the record "suggest[s] that Plaintiff could face a return to state custody after release from California prison."  Nonetheless, Defendants contend the only reason Plaintiff would be placed in ODOC custody again is if he committed a new criminal violation.  Defendants rely on the declaration of Candace E. Wheeler, a Governor-appointed member of the Oregon Board of Parole and Post-Prison Supervision and a custodian of the Board's records to support

their position.   Wheeler's Declaration reflects the answers
provided by Defendants in response to Plaintiff's Third Set of
Interrogatories, which Plaintiff included with and summarized in
his brief.   The facts concerning Plaintiff's post-prison
supervision in Oregon as described by Wheeler appear to be
undisputed.   Plaintiff concedes he was released from ODOC custody
in 2007 and that he is subject to Oregon's post-prison
supervision until June 2, 2011.   Plaintiff is currently
incarcerated in California and is expected to return to Oregon to
complete his post-prison supervision upon release from custody in
California in June 2011.   Wheeler states Plaintiff has been
sanctioned for all known violations of the law and of the
conditions of his post-prison supervision.   In other words,
Plaintiff would have to commit a new violation of the terms of
his post-prison supervision to warrant an additional sanction.
If Plaintiff commits such a violation, Wheeler attests Plaintiff
would serve any sanction-sentence in an Oregon county jail rather
than in an ODOC facility.   Wheeler also notes that because
Plaintiff has less than 14 months remaining on his supervised
release, he is no longer among the class of offenders who would
be returned to an ODOC facility for a violation of post-prison
supervision.

        Thus, Wheeler concludes, and Plaintiff does not appear to
dispute, that there are only two potential ways for Plaintiff to

return to ODOC custody.  First, if he does not return to Oregon after his release from custody in California as required, a warrant for his arrest would likely issue.  If he were arrested outside of Oregon, the Oregon Board of Parole and Post-Prison Supervision would seek permission from the Governor's office to have Plaintiff extradited.  If the Governor granted the Board's request, Plaintiff would be returned to Oregon and would be placed at the Coffee Creek Correctional Institution (CCCI), an ODOC facility, for intake.  Alvarez would remain at CCCI until he could be placed in a county jail.  Wheeler attested this process generally takes less than two weeks.  As noted, the only other way, according to Wheeler, for Plaintiff to return to ODOC custody is for him to commit a new crime.

Based on his repetitive criminal history, Plaintiff asserts there is a reasonable expectation that he likely will be returned to ODOC custody.  Plaintiff notes he already was returned to ODOC custody when he absconded from post-prison supervision in 2007.  Because Defendants cannot "guarantee" Plaintiff will not be returned to ODOC custody, Plaintiff argues the Court should find it is reasonably likely that Plaintiff will be returned to ODOC custody.  Defendants, however, point out that, in any event, Plaintiff now has less than 14 months remaining on his post-prison supervision, which distinguishes his present circumstances from his 2007 violation of post-prison supervision because he

would now serve any sanction for a violation in a county jail. Plaintiff cannot be returned to ODOC custody as long as Plaintiff abides by the law and the terms of his post-prison supervision.

Because Plaintiff is able and, in fact, is required by law not to violate the conditions of his post-prison supervision and not to commit any new crime, the Court will not presume for purposes of this mootness analysis that Plaintiff will do otherwise. Accordingly, the Court concludes Plaintiff's circumstances do not establish a "demonstrated probability" that Plaintiff will again be subjected to ODOC custody and the alleged restrictions on his religious practices. *See Reimers v. State of Oregon,* 863 F.2d 630, 632 (9th Cir. 1988)("In this case, the possibility of recurrence . . . depends on [Plaintiff] committing another crime. Thus, we will not apply the repetition doctrine because [Plaintiff] is able, and indeed is required by law, to prevent this from occurring."). *See also Pierce v. Thomas,* No. 08-CV-705-MA 2009, WL 2476606, at *3 (D. Or. Aug. 10, 2009) ("[C]ourts have been reluctant to find a reasonable probability of repetition where the action will be repeated based on the petitioner's own wrongdoing."). Thus, the Court finds this exception is inapplicable.

## II. On-going infringement of the rights of others.

Even if his remaining claims are moot, Plaintiff also maintains that the Court has jurisdiction to consider them if the

11 -  OPINION AND ORDER

allegedly illegal SRCI policies he challenges are still in effect
and other similarly situated Native American inmates may suffer
the same alleged violation of their religious freedom.  Plaintiff
cites three cases from the Ninth Circuit to support his position
that the on-going nature of the policies that Plaintiff
challenges is sufficient under the circumstances to render
Plaintiff's claim a live controversy because other similarly
situated individuals will be affected by those policies.  *See
Howard*, 480 F.3d at 1009-10.  *See also Or. Advocacy Ctr.*, 322
F.3d at 1116-18; *Brandau*, 578 F.3d at 1067-68.

     The Court notes the parties did not directly address whether
or identify which SRCI policies at issue in this matter are, in
fact, on-going.  In Defendants' Motion for Summary Judgment, they
stated SRCI had changed some of the policies challenged by
Plaintiff; for example, Native American inmates may now wear
headbands, inmates no longer must exit the sweat-lodge ceremony
for an institutional count, and SRCI now permits an annual
powwow.  Nevertheless, on this record the Court cannot conclude
SRCI has changed all of the policies challenged by Plaintiff,
including those related to tobacco ceremonies, the availability
of Native American religious leaders, and the lack of weekly
sweat-lodge ceremonies.  Thus, the Court considers these policies
on-going for purposes of this Motion.

     In any event, Defendants contend this exception is more

limited than described by Plaintiff.  Defendants emphasize the general rule in the Ninth Circuit is that a prisoner's release from prison moots his claims for declaratory or injunctive relief against that institution.  In *Dilley v. Gunn*, the Ninth Circuit explained:  "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies *unless the suit has been certified as a class action*," in which case the representative party's release does not moot the claims of the class.  64 F.3d 1365, 1368 (9th Cir. 1995)(emphasis added).  Defendants contend the exception carved out in *Howard, Brandau*, and *Mink* is a limited extension of the rule as applied to groups of challengers that have not been certified as a class but who, nevertheless, represent individuals still affected by the on-going government policy.

For example, in *Howard*, the Ninth Circuit cited the Supreme Court's decision in *Gerstein v. Pugh* to support its extension of this exception to a group of seventeen inmates whose exposure to the challenged federal court's policy requiring leg shackles for inmates making courtroom appearances was long past.  480 F.3d at 1009-10.  In *Gerstein*, the Court applied this "narrow" exception to a class action in which the class members were no longer subject to the policy at issue, but the "constant existence of a class of persons suffering the deprivation is certain" and the

13 -  OPINION AND ORDER

public defender who represented the class had other potentially affected clients. 420 U.S. 103, 111 n.11 (1975). Relying on *Gerstein* to support its extension of the exception, the Ninth Circuit concluded in *Howard* that its case was "materially similar to a class action in which the class representative's claims may become moot, but there are members of the class whose claims are not moot." *Id.* at 1010.

The Ninth Circuit similarly applied this exception in *Oregon Advocacy Center v. Mink* in which one of the plaintiffs was a nonprofit organization suing the government on behalf of mentally incapacitated criminal defendants. 322 F.3d at 1118. In applying the exception to an organization's challenge to a government policy, the Ninth Circuit once again relied on *Gerstein*. *Id.* at 1117-18 ("Here, as in *Gerstein*, the . . . constant existence of [Oregon Advocacy Center's] constituents suffering the deprivation is certain.").

Here the record does not show this matter is "materially similar to a class action" nor that Plaintiff represents the interests of other inmates generally. *See Howard*, 480 F.3d at 1010. The record clearly reflects Plaintiff was incarcerated with numerous other practitioners of Native American religious tradition, but Plaintiff was not joined by any of them at any point in this action nor did Plaintiff seek to certify a class to challenge SRCI's policies. Moreover, Plaintiff is not a part of

14 -  OPINION AND ORDER

an organization whose interests are affected by the outcome of
this case as in *Mink*.  In addition, Plaintiff's counsel is not a
public defender with numerous clients whose interests are at
stake in the outcome of this action as was the case in *Howard* and
*Gerstein*.  *See* 480 F.3d at 1010; 420 U.S. at 111 n.11.

Ultimately, if this narrow exception were interpreted as
broadly as Plaintiff suggests, it would functionally subsume the
well-established rule that a prisoner's release from the
institution against which he seeks injunctive or declaratory
relief moots the prisoner's claim.  The Court agrees with
Defendants that the exception outlined in *Howard*, *Brandau*, and
*Mink* is more narrowly applied to those circumstances in which the
challenged government policies are on-going *and* the class of
challengers to such policies may be analogized to a certified
class because they represent the interests of a group that stands
to be affected by the on-going policy.  The Court, therefore,
declines to apply this exception to this matter.

In summary, the Court concludes Plaintiff's claims for
declaratory and injunctive relief are moot and Plaintiff's
circumstances do not warrant application of an exception to the
mootness doctrine.

15 -  OPINION AND ORDER

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendants' Motion (#116) for Summary Judgment and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 26th day of August, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

16 - OPINION AND ORDER